## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**IMG ACADEMY, LLC,**

      **PLAINTIFF,**

**V.**

      **CASE NO.: 8:25-CV-02323**

**ANDRES VERA,**

      **DEFENDANT.**

---

### VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

IMG ACADEMY, LLC ("IMG Academy") files its Verified Complaint for injunctive and other relief (the "Complaint") against its former employee, ANDRES VERA ("Vera"). The Complaint includes claims for misappropriation of trade secrets under the Defend Trade Secrets Act of 2016 (the "DTSA"), 18 U.S.C. § 1836, *et seq.*, misappropriation of trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA"), § 668.001, FLA. STAT. *et seq.*; breach of contract for violations of valid and enforceable restrictive covenant agreements; and breach of duty of loyalty. IMG Academy alleges as follows:

### JURISDICTION AND VENUE

1.    The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.    This Court has subject matter jurisdiction over the parties and this action pursuant to 28 U.S.C. § 1331 because it raises federal questions, specifically claims under the federal DTSA, 18. U.S.C. § 1836.

3.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the various state law claims set forth herein because they are so related to the federal claims that they form part of the same case or controversy.

4.    The Court has personal jurisdiction over Vera because he is a resident of Manatee County, Florida, and worked for IMG Academy in Manatee County, Florida.

5.    Venue is proper pursuant to 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

6.    Venue is also proper before this Court because Vera is subject to this Court's personal jurisdiction with respect to this action.

## PARTIES

7.    IMG Academy is a Florida limited liability company with its principal place of business in Bradenton, Florida.

8.    Vera—a former employee of IMG Academy—is an individual residing at 13646 Old Creek Ct, Parrish, FL 34219-3118.

## IMG ACADEMY'S BUSINESS
## AND LEGITIMATE BUSINESS INTERESTS

9.    IMG Academy is the world's leading sports-education brand, providing unparalleled access and opportunity for student-athletes through innovative on-campus and online programming and experiences.

10.    IMG Academy offers a world-renowned boarding school and industry-leading camps at its campus in Bradenton, Florida. It also routinely hosts teams, events, tournaments, and professional athletes.

11.    In the decades since IMG Academy first opened its doors in 1978, it has cultivated an unrivaled experience to empower its student-athletes to win their future.

12.    IMG Academy's student-athletes come from around the globe to participate in its world-class programs.

13.    IMG Academy boasts a 100% graduation rate, has had over 150 students drafted to professional sports leagues in the past ten years, and in 2025 had more than 300 student-athletes commit to continue playing their respective sport at the collegiate level throughout the country.

14.    With over 1,000 employees on campus, IMG Academy employs specialized roles to help its student-athletes reach this unparalleled level of success both in the classroom and on the field of play.

15.    Moreover, IMG Academy has invested significant amounts of time, resources, and effort to ensure that its student-athletes receive world-class instruction

inside and outside of the classroom to best prepare them for academic and athletic success in their future.

16.    IMG Academy has developed highly specialized training programs, strategic business initiatives, exceptional partnerships with world-class brands, and a 450-acre campus of which many Division 1 colleges and professional teams would be envious. Information about its world-class offerings, unique services, student needs, analysis of its programs, strategic plans, and financial models and statements for these programs remains closely guarded, proprietary, and highly confidential.

17.    IMG Academy's customized platform and programs focus on the unique needs of its student-athletes, providing opportunities to learn and develop, and then compete in national and international sports events.

18.    Information about specific services, current, matriculating, and potential student-athletes and their families, analysis of its programs, strategic plans, and profitability of IMG Academy's programs and the student-athletes it serves are all confidential information that competitors could not otherwise obtain or ascertain. This information is extremely valuable to IMG Academy.

19.    The confidential information described above includes IMG Academy's trade secrets. If this information were to become known to competitors, IMG Academy would lose the competitive advantage afforded to it by this information.

20.    The business model of IMG Academy—and by extension any of its competitors—is highly dependent on the programs developed to assist with the development and matriculation of their students—especially in how those programs

can address the educational and athletic needs of current and prospective student-athletes.

21.    The confidential and/or proprietary information and/or trade secrets provided to individuals like Vera includes, but is not limited to,(a)  identification of IMG Academy's current and prospective student-athletes; (b) IMG Academy's non-public methods of business operations (which may include but is not limited to research, data, analytics, concepts, strategies, plans, handbooks, methods, policies, methodologies, partnerships, and procedures developed, acquired, refined or otherwise used by IMG Academy in carrying out its business); (c) information related to IMG Academy personnel and contractors including, but not limited to, strategic plans  and initiatives, compensation structure, financial aid models, proprietary systems developed, key performance metrics, and training; (d) pricing, costs, expenses, fee structures, revenues, income, profitability, and other financial information of IMG Academy; and (e) various other confidential and/or proprietary information and trade secrets.

22.    IMG Academy's confidential and/or proprietary information and/or trade secrets, which is maintained in both electronic and hard copy forms, was compiled through and by the use of IMG Academy's ingenuity, time, marketing, strategies, pricing, labor, expense, investigation, and experience, rendering the information a vital asset of IMG Academy.

23.    IMG Academy's assets are the product of many years of accumulated and distilled information, which is very valuable and maintained in secrecy.

5

24. All of this information derives independent economic value from not being generally known to the public and not being readily ascertainable by proper means and has been subject to efforts that are reasonable under the circumstances to maintain their secrecy.

25. IMG Academy takes reasonable steps to protect its confidential and/or proprietary information and/or trade secrets, its student-athlete population, and its goodwill. As an initial matter, access to this information is only provided on an as-needed basis to staff approved by IMG Academy's management.

26. IMG Academy's electronic databases containing compilations of its data, including its confidential and/or proprietary information and/or trade secrets, require login credentials and passwords to access. All such accounts are secured by a cloud-based identity and access management platform designed to securely connect individuals to applications, devices, and data. IMG Academy also employs strong password policies along with multi-factor authentication.

27. Further still, IMG Academy provides employees with devices, such as laptop computers and smartphones, along with e-mail accounts to communicate internally and externally, to maintain integrity of its data security.

28. Once an employee has logged into their IMG Academy device, all critical applications containing confidential and/or proprietary information and/or trade secrets are behind an additional log-in with two-factor identification. Typically, upon an employee's separation, IMG Academy will wipe any devices the employee used

unless there is a request from IMG Academy's legal or Human Resources team to refrain from doing so.

29.    The data contained on IMG Academy laptops and employees' email accounts is consistently backed up on IMG Academy's cloud server. If an employee loses a laptop or phone, IMG Academy can remotely lock the device and wipe it if necessary.

30.    Additionally, IMG Academy provides annual training on cybersecurity practices, including the use of external drives. If an external drive is connected with malware, IMG Academy's anti-virus software rejects the device and immediately notifies IMG Academy's IT Department.

31.    Moreover, IMG Academy's Team Member Handbook (the "Handbook"), which every employee receives and acknowledges, contains policies addressing the use and disclosure of IMG Academy's confidential and/or proprietary information and trade secrets. Employees review and sign the Handbook annually.

## RELEVANT POLICIES AND AGREEMENTS

32.    IMG Academy's Handbook contains the policies with which IMG Academy employees are required to comply.

33.    On September 19, 2024, Vera signed an acknowledgement that he agreed to the terms of the Handbook. A true and correct copy of the relevant policies within the Handbook with the signed acknowledgement from Vera is attached hereto as **Exhibit A**.

34.    The Handbook provides, in relevant part:

**Confidential Information**

Definition. The Company takes steps to maintain the confidential nature of its confidential and proprietary information. For purposes of this policy, "Confidential Information" means business information that is created and used in the Company's business and which is not generally known by the public, including but not limited to: Trade Secrets; proprietary or customized software and databases; manufacturing processes and methods, product formulas, research and development; new product plans; the Company's confidential records pertaining to its existing or potential clients/athletes/student-athletes, including key clients/athletes/student-athletes contact information, protected health information under HIPAA, contract terms and related information; confidential business opportunities; merger or acquisition activity (including targets, opportunities, or prospects); confidential information regarding suppliers or vendors, including key supplier or vendor contact information, contract terms and related information; strategies for advertising and marketing; confidential business processes and strategies, including operational training and operational procedures; financial and revenue data and reports, including pricing, quoting and billing methods; and any other business information that the Company maintains as confidential.

- Confidential Information also includes all confidential information of a third party, such as a student-athlete, athlete, or client, which may be communicated to, acquired by, learned of, or developed by Team Members in the course of or as a result of their employment with the Company. Confidential Information does not include information that is or may become known to Team Members or to the public from sources outside the Company and through means other than a breach by Team Members after written approval from the Company.

- "Trade Secret" means information defined as a trade secret under applicable state law or the Defend Trade Secrets Act of 2016. For applicants/Team Members subject to separate written confidentiality agreements, those agreements may

8

contain additional requirements and restrictions in addition to those identified in this section.

<u>Non-Disclosure and Non-Use</u>. As Team Members of the Company and in the exercise of duties for the Company, Team Members will have access to and will use certain Confidential Information and Trade Secrets, and that such Confidential Information and Trade Secrets constitute confidential and proprietary business information and/or Trade Secrets of the Company, all of which is the Company's exclusive property. Team Members shall not, and shall not permit any other person or entity to, directly or indirectly, without the prior written consent of the Company: (a) use Confidential Information or Trade Secrets for the benefit of any person or entity other than the Company; (b) remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Information or Trade Secrets, except as required to perform responsibilities for the Company; (c) load, install, copy, store, or otherwise retain any Confidential Information on any non-Company computer or other device; and (d) while employed and thereafter, publish, release, disclose, deliver or otherwise make available to any third party any Confidential Information or Trade Secrets by any communication, including oral, documentary, electronic or magnetic information transmittal device or media.

## Intellectual Property

Team Members must show respect for the laws that govern intellectual property, including copyright, trademark, trade secrets and rights of publicity and may not infringe on them. When referencing someone else's work, Team Members must seek permission to utilize the work and, where appropriate, also include credit to the author of such work. Team Members should not use IMGA logos and related brand marks without prior approval from the Corporate Communications team.

Team Members must not disclose any information that may be considered confidential and/or proprietary to IMGA, its clients or partners, including, but not limited to, trade secrets, intellectual property, strategy, financials, products, product plans and/or sensitive client information. Unauthorized disclosure of confidential and/or proprietary information will result in disciplinary action, up to and including termination of employment or affiliation with IMGA. Do not post internal reports, policies, procedures or other internal business-related confidential communications, including non-public information related to IMGA ownership.

(*See* **Exhibit A** at pp. 3-4).

35.    Also, at the outset of his employment with IMG Academy, Vera executed an offer letter (the "Offer Letter"). A true and correct copy of the Offer Letter is attached hereto as **Exhibit B**.

36.    The Offer Letter provides, in relevant part:

**Representation of Existing and Prospective Clients, Properties and Customers:**

(a)    During your employment with the Company you agree that you will not solicit or represent any client, property or customer on behalf of anyone other than the Company, including on your own behalf.

(b)    For the period of two (2) years following the termination of your employment with the Company (whether voluntary or not), you will not directly or indirectly solicit or represent as a client, on your own behalf or on behalf of another, any person or entity which (i) was a client of the Company within the eighteen months next preceding the end of your employment with the Company and, further, was a client with whom you or the Company employees reporting to you, had dealings while you were employed by the Company; or (ii) was a prospective client of the Company who was actively solicited as such and received a formal Company business proposal within the twelve (12) months following the end of your employment with the Company and, further, you, or the Company employees reporting to you, participated in such solicitation.

**Restrictions regarding Certain Entities:** For the twelve month period following the termination of Employee's employment with IMG (whether voluntary or not), Employee will not, directly or indirectly, perform services in the nature of the services Employee performed for IMG on behalf of:

(i)    any former employees of WME or IMG,

      (ii)               any current, former or prospective clients (whether an individual or an entity) of WME or IMG with whom Employee or those reporting to Employee had substantial dealings while Employee was employed by IMG, or

      (iii)             the following entities: any entity located anywhere in the United States that that [sic] is competitive with IMGA.

**<u>Non-Solicit:</u>** During your employment with the Company, you agree that you will not, directly or indirectly, be involved with the soliciting outside of the Company of any person who (i) is or was a Company or other Endeavor employee or independent contractor and (ii) has or had significant client interaction within twelve (12) months of the completion of such person's services to the Company. For the twelve (12) months following the end of your employment with the Company (regardless of the reason for the separation and whether it was voluntary or not), you agree that you will not, directly or indirectly, be involved with the soliciting or attempt to solicit of any person who (i) is or was a Company or other Endeavor employee or independent contractor and (ii) has or has had significant client interaction as part of such person's services to the Company. "Significant client interaction" is understood to mean contact with a Company or Endeavor client within twelve (12) months prior to the hiring or proposed hiring of such a person.

37.    As previously observed, IMG Academy's legitimate business interests supporting the provisions in the Offer Letter include, but are not limited to, IMG Academy's confidential and/or proprietary information and trade secrets it shares with the subject employees; its market share within the industry; its relationships with current and prospective student-athletes, sponsors, and students; and IMG Academy's reputation and goodwill in the industry.

### VERA'S EMPLOYMENT, SEPARATION, AND VIOLATION OF THE HANDBOOK AND OFFER LETTER

38.    On May 16, 2019, IMG Academy extended an offer to Vera to work as a Student Athlete Advisor, Golf.

39.    Vera began working for IMG Academy in this role on June 12, 2019.

40.    In its mission to develop premier programs for student-athletes seeking to matriculate into successful college and professional sports programs, IMG Academy invests heavily in establishing substantial relationships with its current and prospective student-athletes and their families, and IMG Academy develops and maintains those relationships to build a successful operation so as to enable IMG Academy to maintain its competitive edge and excel in its mission and industry.

41.    The development of such substantial contact with the current and prospective student-athletes and their families is critical to how IMG Academy operates and to further its mission to provide premier services to the student-athletes it serves.

42.    During their employment relationship with IMG Academy, employees like Vera had substantial contact with the current and prospective student-athletes and their families of IMG Academy.

43.    As a result of their relationships with IMG Academy, these employees—like Vera—were afforded the opportunity and resources to develop, and would in fact develop, substantial contacts with IMG Academy's current and prospective student-athletes and their families.

44.    Pointedly, in his role as a Student Athlete Advisor over a six-year span of time, Vera had routine, substantial contact with IMG Academy's current and prospective student-athletes in his day-to-day role, as IMG Academy helped Vera

in establishing and advancing IMG Academy's advantageous relationships with IMG Academy's current and prospective student-athletes and their families.

45.    Moreover, as a Student Athlete Advisor, Vera was also afforded opportunity to travel to a number of locations to meet with IMG academy partners, was provided extensive and substantial access to highly classified and proprietary information, including the confidential information and trade secrets described in the preceding section.

46.    In fact, as a Student Athlete Advisor, Vera was afforded access to even more information, including—but not limited to—IMG Academy's business plans, rate cards, and company analytics, which was more extensive than that of most team members within the IMG Academy organization.

47.    Vera submitted his letter of resignation to IMG Academy on August 11, 2025.

48.    IMG Academy accepted Vera's resignation and subsequently terminated Vera's employment on August 13, 2025.

49.    In the days leading up to his notice of resignation, and unbeknownst to IMG Academy at the time, Vera exported and downloaded a wealth of IMG Academy's confidential and/or proprietary information.

50.    Vera downloaded hundreds of electronic records from his IMG Academy device and copied them to one or more external storage devices. The confidential and/or proprietary information in the records taken by Vera includes,

among other documents, IMG Academy's strategic plans, revenue plans, revenue projections, student lists, curriculum guides, rate cards, course progression plans.

51.    Moreover, Vera exported at least 1,045 "Opportunities" from IMG Academy's confidential Customer Relationship Management ("CRM") system. Opportunities are prospective IMG Academy student-athletes and such data is highly confidential owned by IMG Academy.

52.    Upon discovery of Vera's misconduct, on or about August 15, 2025, IMG Academy sent a letter to Vera demanding that he return the confidential, proprietary, and/or trade secret information in his possession, delete any copies he made of said confidential, proprietary, and/or trade secret information, and submit his electronic devices for examination to ensure his compliance.

53.    On or about August 19, 2025, Vera responded, claiming that he had nothing in his possession, custody, or control belonging to IMG Academy, asserting instead that he had simply saved his own personal matters but would be willing to provide a thumb drive for review.

54.    The following day, on August 20, 2025, IMG Academy responded, advising that this representation was misguided as its own investigation indicated documents it considered to be confidential, proprietary, and/or trade secrets had seemingly been copied onto an external device, and exported 1,045 Opportunities during that same time period.

55.    Vera has thus far failed to respond to IMG Academy's request or provide satisfactory assurances that he will return the confidential, proprietary,

and/or trade secret information in his possession, delete any copies he made of said confidential, proprietary, and/or trade secret information, and submit his electronic devices for examination to ensure his compliance.

56.    Upon information and belief, Vera has commenced employment with Axis Sports Academy, a fledgling competing sports academy that per its website offers online academic courses and provides athletic coaching in three sports with plans to open a physical campus for the 2026-2027 school year.

57.    This fledgling competing sports academy has already recruited and hired several former IMG Academy employees to support the company's initial development and launch.

58.    Upon information and belief considering his misrepresentation of the materials he downloaded, Vera intends to use IMG Academy's confidential and/or proprietary information and/or trade secrets on behalf of the fledgling competing sports academy in an attempt to compete with IMG Academy.

59.    The confidential and/or proprietary information and/or trade secrets misappropriated by Vera would be extremely valuable to a sports academy seeking to develop a sports-education academy and enter a competitive field.

60.    Upon information and belief, Vera seeks to use IMG Academy's confidential and/or proprietary information and/or trade secrets to help develop one or more student-athletic programs for the fledgling competing sports academy to create a framework to operate and to solicit IMG Academy's current and potential student-athletes in violation of the Offer Letter and the Handbook.

61.    IMG Academy continues to investigate the extent of Vera's actions, and it reserves the right to amend this Complaint based on new information and evidence learned during its investigation.

62.    Since IMG Academy's relatively recent discovery of Vera's actions in the misappropriation of the confidential and/or proprietary information and trade secrets, and other tortious practices, IMG Academy has had to focus its resources on mitigation and protecting it from the loss of its trade secrets, confidential and/or proprietary information.

63.    As a further result of IMG Academy's relatively recent discovery of Vera's actions, IMG Academy has suffered, and will continue to suffer, irreparable harm along with economic damages.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS – DEFEND TRADE SECRETS ACT, 18. U.S.C. § 1836

64.    IMG Academy realleges and incorporates paragraphs 1-39 and 46-63, as if fully set forth herein.

65.    While employed with IMG Academy, Vera had access to IMG Academy's confidential information, including—but not limited to—(a) pricing, costs, expenses, revenues, income, and other financial information of IMG Academy; (b) data regarding IMG Academy's current and prospective student-athletes; (c) IMG Academy's nonpublic methods of business operations (which may include but is not limited to research, data, analysis, concepts, strategies, plans, handbooks, methods, policies and procedures developed, acquired, refined or otherwise used by IMG

16

Academy in carrying out its business); (d) information related to IMG Academy personnel and contractors including, but not limited to, compensation structure, performance, and training; and (e) various other confidential and/or proprietary information and trade secrets.

66.    IMG Academy expended substantial time, effort, money, and resources in developing and maintaining its confidential information.

67.    IMG Academy takes reasonable, affirmative measures to maintain the confidentiality of this information for its exclusive benefit and competitive advantage in the industry.

68.    This information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

69.    This confidential information constitutes trade secrets subject to protection under the DTSA, 18 U.S.C. §1832.

70.    IMG Academy's trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.

71.    By signing the Handbook, Vera knew he had a duty to maintain the secrecy of and not disclose or misappropriate IMG Academy's trade secrets for his own benefit or for the benefit of another to the detriment of IMG Academy and return any trade secrets in his possession upon separation.

72.     Vera had actual knowledge that the information he obtained during his employment with IMG Academy was, as described above, IMG Academy's trade secrets.

73.     Upon information and belief, Vera wrongfully and willfully misappropriated and/or disclosed the trade secrets and used the confidential and/or proprietary information and trade secrets to advance his own pecuniary interests and/or those of his new employer in violation of the Handbook and Federal law.

74.     Vera misappropriated IMG Academy's trade secrets, or appropriated them without authorization, by taking them for purposes not authorized by the Handbook.

75.     Vera also misappropriated IMG Academy's trade secrets, or appropriated them without authorization, by taking them before he submitted his resignation to IMG Academy and, on information and belief, using them for the benefit of himself and/or his new employer.

76.     On information and belief, Vera knew, or should have known, that he was prohibited from retaining, disclosing, or using IMG Academy's trade secrets after his employment with IMG Academy ended.

77.     On information and belief, Vera continues to wrongfully and willfully disclose and use IMG Academy's trade secrets to advance his own pecuniary interests and/or those of his new employer.

78.     The misappropriations were and continue to be willful and malicious.

79.     The unlawful actions are continuing.

80.    Unless Vera is temporarily and subsequently permanently restrained and enjoined from using the subject trade secrets, IMG Academy will suffer irreparable injury, as Vera will continue to have access and the ability to make use of IMG Academy's trade secrets for financial gain.

81.    As a direct and proximate result of Vera's misappropriation of IMG Academy's trade secrets, IMG Academy has suffered, and will continue to suffer, irreparable harm and economic damages, including—but not limited to—disruption of business, lost revenues and profits, incidental and consequential damage, actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

82.    IMG Academy has retained the Ogletree Deakins law firm to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to the full extent allowed under the law.

WHEREFORE, IMG Academy respectfully requests that this Court:

(a)    Enter a preliminary injunction prohibiting Vera's use and disclosure of IMG Academy's trade secrets;

(b)    Enter a permanent injunction prohibiting Vera's use and disclosure of IMG Academy's trade secrets;

(c)    Enter judgment in favor of IMG Academy and against Defendant;

(d)    Award IMG Academy damages to include actual damages, lost revenues and profits, incidental and consequential damages, any other losses attributable to the misappropriations, and unjust enrichment;

(e)    Award IMG Academy its attorneys' fees and costs as permitted by the DTSA;

(f)     Award IMG Academy exemplary damages as permitted by law;

(g)     Award IMG Academy prejudgment interest; and

(h)     Grant such other and further relief as this Court deems just and proper.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS – FLORIDA UNIFORM TRADE SECRETS ACT

83.     IMG Academy realleges and incorporates paragraphs 1-39 and 46-63, as if fully set forth herein.

84.     As an employee of IMG Academy, Vera had access to IMG Academy's confidential information, including—but not limited to—(a) pricing, costs, expenses, revenues, income, and other financial information of IMG Academy; (b) data regarding IMG Academy's current and prospective student-athletes; (c) IMG Academy's nonpublic methods of business operations (which may include but is not limited to research, data, analytics, concepts, strategies, plans, methods, policies and procedures developed, acquired, refined or otherwise used by IMG Academy in carrying out its business); (d) information related to IMG Academy personnel and contractors including, but not limited to, compensation structure, performance, and training; and (e) various other confidential and/or proprietary information and trade secrets.

85.     IMG Academy expended substantial time, effort, money, and resources in developing and maintaining this confidential information.

86.    IMG Academy takes reasonable, affirmative measures to maintain the confidentiality of this information for its exclusive benefit and competitive advantage in the industry.

87.    This confidential information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

88.    This confidential information qualifies as IMG Academy's trade secrets as defined by the FUTSA.

89.    By signing the Handbook, Vera knew he had a duty to maintain the secrecy of and not disclose or misappropriate IMG Academy's trade secrets for his own benefit or for the benefit of another to the detriment of IMG Academy and return any trade secrets in his possession upon his separation.

90.    On information and belief, Vera wrongfully disclosed the trade secrets to his new employer and used the confidential and/or proprietary information and trade secrets—without IMG Academy's express or implied consent—to advance his own pecuniary interests and/or those of his new employer, in violation of the Handbook and Florida law.

91.    Vera misappropriated IMG Academy's trade secrets, or appropriated them without authorization, by taking them for purposes not authorized by the Handbook.

92. Vera also misappropriated IMG Academy's trade secrets, or appropriated them without authorization, by taking them before Vera submitted his resignation to IMG Academy and, on information and belief, using them for the benefit of himself and/or his new employer.

93. Vera knew, or should have known, that he was prohibited from retaining, disclosing, or using IMG Academy's trade secrets after his employment with IMG Academy ended.

94. Vera continues to wrongfully and willfully disclose and use IMG Academy's confidential information or trade secrets to advance his own pecuniary interests and/or those of his new employer.

95. The misappropriations were and continue to be willful and malicious.

96. The unlawful actions are continuing.

97. Unless Vera is restrained and enjoined from using the subject trade secrets, IMG Academy will suffer irreparable injury, as Vera will continue to have access and the ability to make use of IMG Academy's trade secrets for financial gain.

98. As a direct and proximate result of Vera's misappropriation of IMG Academy's trade secrets, IMG Academy has suffered, and will continue to suffer, irreparable harm and economic damages, including—but not limited to—disruption of business, lost revenues and profits, incidental and consequential damage, actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss, punitive and/or exemplary damages, and attorneys' fees as a result of the misappropriation.

99.    IMG Academy has retained the Ogletree Deakins law firm to represent it in this action and is entitled to recover reasonable attorneys' fees and litigation costs to the full extent allowed under the law.

WHEREFORE, IMG Academy respectfully requests that this Court:

(a)    Enter a preliminary injunction prohibiting the use and disclosure of IMG Academy's trade secrets

(b)    Enter a permanent injunction prohibiting the use and disclosure of IMG Academy's trade secrets;

(c)    Enter judgment in favor of IMG Academy and against Vera;

(d)    Award IMG Academy damages to include actual damages and unjust enrichment;

(e)    Award IMG Academy its attorneys' fees and costs as permitted by the FUTSA;

(f)    Award IMG Academy exemplary damages as permitted by law;

(g)    Award IMG Academy prejudgment interest; and

(h)    Grant such other and further relief as this Court deems just and proper.

### COUNT III – BREACH OF CONTRACT – NON-COMPETITION

100.    IMG Academy realleges and incorporates paragraphs 1-52, 56-59, and 61-63, as if fully set forth herein.

101.    Vera's Offer Letter with IMG Academy is a valid and enforceable restrictive covenant agreement.

102.    Vera's Offer Letter prohibits him for the twelve-month period following the termination of his employment with IMG Academy, from directly or indirectly,

performing services in the nature of the services Vera performed for IMG Academy on behalf of any entity located anywhere in the United States that is competitive with IMG Academy.

103.    IMG Academy fully performed its obligations under the Offer Letter.

104.    On information and belief, Vera knowingly, intentionally, and materially breached the terms of the Offer Letter by, among other things, going to work for a competitor of IMG Academy.

105.    Upon information and belief, Vera's unlawful actions are ongoing.

106.    As a direct and proximate result of Vera's breach of the Offer Letter, IMG Academy has suffered, and will continue to suffer, irreparable harm and economic damages.

WHEREFORE, IMG Academy respectfully requests that this Court:

    (a)    Enter a preliminary injunction prohibiting Vera from violating the terms of the Offer Letter as it relates to his employment with a competitor;

    (b)    Enter a permanent injunction prohibiting Vera from violating the terms of the Offer Letter as it relates to his employment with a competitor;

    (c)    Enter judgment in favor of IMG Academy and against Vera;

    (d)    Award IMG Academy actual damages, and its costs and attorneys' fees incurred in prosecuting this action;

    (e)    Award IMG Academy prejudgment interest; and

    (f)    Grant such other and further relief as this Court deems just and proper.

## COUNT IV – BREACH OF CONTRACT –
## NON-SOLICITATION

107.    IMG Academy realleges and incorporates paragraphs 1-51, 56, and 60-63, as if fully set forth herein.

108.    Vera's Offer Letter with IMG Academy is a valid and enforceable restrictive covenant agreement.

109.    Vera's Offer Letter prohibits him, for the period of two (2) years following the termination of his employment with IMG Academy, from directly or indirectly soliciting or represent as a client, on his own behalf or on behalf of another, any person or entity which (i) was a client of IMG Academy within the eighteen months next preceding the end of his employment with IMG Academy and, further, was a client with whom Vera or IMG Academy employees reporting to him, had dealings while he was employed by IMG Academy; or (ii) was a prospective client of IMG Academy who was actively solicited as such and received a formal IMG Academy business proposal within the twelve (12) months following the end of Vera's employment with IMG Academy.

110.    IMG Academy fully performed its obligations under the Offer Letter.

111.    On information and belief, Vera knowingly, intentionally, and materially breached the terms of the Handbook and Offer Letter by, among other things, misappropriating with the intent to use the confidential, proprietary, and/or trade secret information to solicit IMG Academy's current and/or prospective student-athletes for the benefit of his new employer.

112.    Vera's unlawful actions are ongoing.

113.    As a direct and proximate result of Vera's breach of his contract, IMG Academy has suffered, and will continue to suffer, irreparable harm and economic damages.

WHEREFORE, IMG Academy respectfully requests that this Court:

(a)    Enter a preliminary injunction prohibiting Vera from violating the terms of the Offer Letter as it relates to the solicitation of IMG Academy's student-athletes;

(b)    Enter a permanent injunction prohibiting Vera from violating the terms of the Offer Letter as it relates to the solicitation of IMG Academy's student-athletes;

(c)    Enter judgment in favor of IMG Academy and against Vera;

(d)    Award IMG Academy actual damages, and its costs and attorneys' fees incurred in prosecuting this action;

(e)    Award IMG Academy prejudgment interest; and

(f)    Grant such other and further relief as this Court deems just and proper.

## COUNT V – BREACH OF DUTY OF LOYALTY

114.    IMG Academy realleges and incorporates paragraphs 1-51 and 56-63, as if fully set forth herein.

115.    Vera had fiduciary duties of loyalty to IMG Academy not to actively use his position for his own personal benefit, or for the benefit of other companies such as his new employer, and/or to hinder IMG Academy's ability to succeed in its business operations.

116. Vera, through his position at IMG Academy, formed substantial relationships with IMG Academy's student-athletes and coaches, along with having access to IMG Academy's confidential and/or proprietary information—including greater access than other team members working for IMG Academy.

117. Vera was reposed with trust and confidence by IMG Academy, which he knew and voluntarily accepted.

118. During his employment with IMG Academy, Vera breached his duty of loyalty to IMG Academy by misappropriating confidential information and trade secrets of IMG Academy before his resignation and/or, upon information and belief, using his relationships with IMG Academy's employees and knowledge of confidential information to compete with IMG Academy before his departure.

119. Through this conduct, Vera engaged in disloyal acts in anticipation of his future operation of or employment with, breaching his respective duties of loyalty.

120. As a proximate result of Vera's respective actions, IMG Academy has suffered and will continue to suffer damages, including punitive damages.

WHEREFORE, IMG Academy respectfully requests that this Court:

(a)    Enter judgment in favor of IMG Academy and against Vera;

(b)    Award IMG Academy actual damages, compensatory damages, and punitive damages, and costs incurred in prosecuting this action;

(c)    Award IMG Academy prejudgment interest; and

(d)    Grant such other and further relief as this Court deems just and proper.

27

## **JURY TRIAL DEMAND**

IMG Academy demands a trial by jury for all issues so triable.

## <u>VERIFICATION OF COMPLAINT</u>
## <u>FOR INJUNCTIVE AND OTHER RELIEF</u>

I, <u>Dan Malasky</u>, certify that I am the <u>Chief Legal Officer</u> of IMG

Academy, LLC ("IMG Academy"), and I am authorized to speak for and on behalf

of IMG Academy. I am over 21 years of age and am competent to testify. Under

penalty of perjury, I declare and affirm that I have read the foregoing Verified

Complaint for Injunctive and Other Relief, and the facts alleged herein are true and

correct, based on my personal knowledge, review of IMG Academy's business records,

employees, and other information shared with me in the ordinary course of IMG

Academy's business.

Executed on this <u>29th</u> day of August, 2025.

Signed by:



FE1D001A13A1421...

DATED:  August 29, 2025                    Respectfully submitted,

                                           **/s/ WILLIAM E. GROB**
                                           **WILLIAM E. GROB**; FBN: 0463124
                                           william.grob@ogletree.com
                                           **JOHN C. GETTY**; FBN: 1013911
                                           john.getty@ogletree.com
                                           **Daniel E. Kalter**; FBN: 1025094
                                           daniel.kalter@ogletree.com
                                           OGLETREE, DEAKINS, NASH,
                                             SMOAK & STEWART, P.C.
                                           100 N. Tampa Street, Suite 3600
                                           Tampa, Florida 33602
                                           Telephone:  813-289-1247
                                           Facsimile:  813-289-6530
                                           *Attorneys For Plaintiff, IMG Academy, LLC.*